UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Eric Steere, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-1900 (RCL) |
| ) | |
| The George Washington ) | |
| University, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Before the court in this Americans with Disabilities Act (ADA) case is defendants' motion [28] for summary judgment. Also pending is plaintiff's motion [32] for extension of time to file a response to defendants' summary judgment motion. The court will grant nunc pro tunc plaintiff's motion for extra time and, for the reasons set forth below, will grant in part and deny in part defendants' summary judgment motion.

I.   SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Whether a fact is "material" is determined in light of the

1

applicable substantive law invoked by the action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In light of the applicable substantive law, a "genuine issue of material fact" is a fact that is determinative of a claim or defense, and therefore, affects the outcome of the case.  See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248.  The moving party bears the initial burden of demonstrating that no genuine issues of material fact are in dispute.  Upon such a showing, the burden then shifts to the non-moving party to demonstrate that genuine issues of material fact are in dispute.  The Court is precluded from weighing evidence or finding disputed facts and must draw all inferences and resolve all doubts in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

II.     FACTUAL BACKGROUND

Plaintiff Eric Steere was once a medical student at The George Washington University School of Medicine and Health Sciences ("School").  The School admitted plaintiff for the fall 2000 term.  The School dismissed plaintiff from the School in 2003.

The School publishes a bulletin that sets forth academic requirements, circumstances that would subject a student to risk of dismissal, and the process that the School takes when considering whether to dismiss a student.  Failing and conditional grades put students at risk for dismissal.  Failing grades are given to students who have not met a department's minimum requirement and who could not meet that requirement through remedial work.  Conditional grades are given to students who have not met a department's minimum requirement but who could meet that requirement after remedial work.  Students are subject to dismissal for various

shortcomings, including the receipt of two grades of failing or conditional during the first semester of the first year or one such grade after previously being at risk of dismissal.

Decisions to dismiss students are made by the School's Dean after a hearing. The School has a Medical Student Evaluation Committee ("MSEC") that makes advisory recommendations to the Dean about whether to dismiss students who are at risk of dismissal because of poor academic performance. To formulate its recommendations, the MSEC meets with at-risk students, reviews their academic records, and reads any written statements that these students submit. The Dean's decision concerning dismissals shall be in writing.

Plaintiff began his studies at the School in fall of 2000. Due to poor grades in his first semester, Dean Williams, on the advice of the MSEC, requested that plaintiff take leave and return to repeat the entire first-year curriculum in fall of 2001. On his second try, plaintiff passed his first semester classes but received a grade of conditional in Physiology during the spring 2002 semester. Due to the conditional grade, Dean Williams, of the advice of the MSEC, required plaintiff to pass Physiology during the summer, which plaintiff did. After all this, plaintiff met with academic trouble once more, in fall of 2002, when he failed Pharmacology and received a conditional grade in Microbiology. Plaintiff came before the MSEC one final time in January 2003. The board recommended dismissal. Dean Williams ultimately adopted that recommendation on April 1, 2003, but not before plaintiff submitted, for the first time, neuropsychological test results from his psychologist, Dr. Kaplan, indicating that plaintiff suffered from Attention Deficit Disorder ("ADD") and a mathematics learning disability. At about that time, plaintiff requested accommodations from the School. Dean Williams gave no weight to plaintiff's disability report, stating that his decision was based on plaintiff's poor

academic performance and that he was adopting the recommendation of the MSEC.

Plaintiff currently attends the American University of the Carribean School of Medicine ("AUC"). He began his studies at AUC in May of 2004. He was approved for testing accommodations and receives time-and-a-half on examinations. During his first semester, he completed his courses, courses covering similar subject matter as those at the School, with passing grades.

III.  ANALYSIS

Defendants move for summary judgment on the ADA claim, arguing that plaintiff was not otherwise qualified as a medical student at the School and that the School did not discriminate. Defendants also argue that plaintiff's request for damages be struck and that the individually named defendants be dismissed. Finally, defendants ask the court to dismiss plaintiff's pendant negligent misrepresentation claim.

Plaintiff has brought suit under the ADA. Section 302 of Title III of the ADA provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To establish a violation of this provision, plaintiff must prove: "(1) that she has a disability; (2) that she is otherwise qualified for the benefit in question; and (3) that she was excluded from the benefit due to discrimination because of the disability." Kaltenberger v.

Ohio College of Podiatric Med., 162 F.3d 432, 435 (6th Cir. 1998); cf. Ferrell v. Howard Undiversity, No. 98-CV-1009, 1999 WL 1581759, at *3 (D.D.C. Dec. 2, 1999), aff'd 254 F.3d 315 (D.C. Cir. 2000).

### A.   Otherwise Qualified

"A handicapped or disabled person is 'otherwise qualified' to participate in a program if she can meet its necessary requirements with reasonable accommodation." Kaltenberger v. Ohio College of Podiatric Medicine, 162 F.3d 432, 435 (6th Cir. 1998).

Defendant argues that plaintiff is not otherwise qualified because he has not, to date, performed up to standards. Defendants miss the point. Plaintiff never benefitted from accommodations at the School, and therefore his record at the School tells us nothing about how he would perform with accommodations. Meanwhile, plaintiff offers evidence that he could succeed with accommodations. Plaintiff is currently a medical student at AUC where he has the sole accommodation of time-and-a-half on examinations. With that accommodation, plaintiff has passed all of his courses. Defendant's response is that success at AUC is not equivalent to success at the School. That is not sufficient for summary judgment. There is a live factual dispute that requires the court to deny defendants' motion on this point.

### B.   Discrimination

The ADA protects against numerous kinds of discrimination. Plaintiff brings a reasonable accommodation claim only, (Pl. Opp. at 12.), for which discrimination is defined as:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. § 12182(b)(2)(A)(ii).  It is presently undisputed that plaintiff requested accommodations and submitted medical evidence of his condition after the MSEC made its recommendation but before the dean acted on that recommendation.  The precise nature of the accommodations requested are not in the record, but for this motion the parties proceeded, as will the court, as if plaintiff requested some testing accommodations and requested some sort of further consideration on whether he should be dismissed in light of the new evidence of his alleged learning disability.

For their part, defendants first argue that they had no obligation to provide either modification because plaintiff had failed to request the modifications in time – that is, before dismissal.  This Circuit has held in the employment context that both the ADA prohibits only discriminatory acts performed "with an awareness of the disability itself and not merely an awareness of some deficiency in the plaintiff's performance that might be a product of an unknown disability." Crandall v. Paralyzed Veterans of America, 146 F.3d 894, 897 (D.C. Cir.1998).  Along these lines, while a university has no obligation to readmit a dismissed student who later learns of a disability, Ferrell, 1999 WL 1581759, at *3, and while an university need not accommodate a student undergoing testing for a disability or a student who only thinks she is disabled, Kaltenberger, 162 F.3d at 437, a university does have an obligation once it learns that a student is disabled, Wynne v. Tufts School of Med., 976 F.2d 791, 795 (1st Cir. 1992).

 The defendants' own regulations doom their timeliness argument: they give the Dean

total discretion to adopt or ignore the MSEC recommendations. The dismissal decision took place on April 1, 2003 after the Dean had been informed about and had knowledge of plaintiff's condition and request. The MSEC never considered the evidence of plaintiff's learning disability. Therefore, the School knew of plaintiff's alleged disability before dismissal.

Defendants next argue that the modifications that plaintiff requests are unreasonable because they amount to a request for a second chance. Some courts have admonished that the ADA requires reasonable modifications, but not second chances. Under this "no second chance" banner, courts have held that for a student or worker who cannot perform satisfactorily even when accommodated and gets terminated as a result, the reversal of the termination decision would not be a reasonable modification. See, e.g., Bugg-Barber v. Randstad US, L.P., 271 F. Supp. 2d 120, 131 (D.D.C. 2003). Courts have also held that for a person who cannot control the effects of his or her disability and gets terminated as a result, the reversal of the termination decisions would likewise not be a reasonable modification. See, e.g., Siefken v. Village of Arlington Heights, 65 F.3d 664 (7th Cir. 1995) (holding that a diabetic police officer was properly terminated when he suffered a diabetic reaction on the job and drove his car erratically and at high speeds through residential areas); accord Hill v. Kansas City Area Transp. Auth., 181 F.3d 891 (8th Cir. 1999). The second chance doctrine, in so far as it is a doctrine, works to deny already accommodated and at-fault plaintiffs from winning an endless string of new accommodations after each failure. The doctrine does not apply to plaintiffs who, through no fault of their own, have not yet had a chance to get the modifications they need. See Dudley v Hannaford Bros. Co., 333 F3d 299 (1st Cir. 2003).

In Dudley, the First Circuit found that a second chance – a reconsideration of a decision –

could be required under the ADA.  Plaintiff Dudley suffered severe injuries during a car crash.  He never fully recovered, and his disabilities included "severely impaired speech, a pronounced loss of muscular control, an inability to take even breaths, and a tendency toward impulsive mood swings."  333 F.3d at 301.  These disabilities made Dudley appear drunk.  Defendant food store had an unwritten policy that cashiers should not sell alcohol to people they deem drunk and a policy that management would never reconsider a cashier's decision not to sell.  Id. at 302.  One evening, Dudley attempted to purchase alcohol at the food store.  The cashier refused to sell the alcohol to Dudley and the manager, relying on the store policy, refused to reconsider the cashier's decision.  Id.  The First Circuit held that requiring an exception or modification to the store's refusal to reconsider policy for disabled people was reasonable and necessary given the policy's discriminatory effect, and the court upheld the district court's injunction requiring the store to abandon its refusal to reconsider policy.  Id. at 308-11.

       The facts of this case fit far more comfortably within the Dudley framework than within the framework of the typical "no second chance" cases.  In this case, the Dean, though he had plaintiff's disability report, gave it no weight in his decision to adopt the MSEC recommendation.  He stated that his decision was based on plaintiff's poor academic performance and that he was adopting the recommendation of the MSEC, which was made before anyone knew of plaintiff's disability.   Plaintiff's request for further consideration by the MSEC or Dean was made before dismissal.  Plaintiff had been unaware of his disability throughout his academic career and medical school.  Plaintiff's medical school failures, then, occurred while he was not accommodated in any way.  He does not seek a second chance to monitor her disability or a new set of accommodations.  Plaintiff seeks a first chance to

successfully handle his disability. Plaintiff's request for reconsideration, like Dudley's, is not unreasonable on the ground that it asks for a second chance, and therefore, summary judgment is not appropriate.

Therefore, summary judgment on this point is denied to defendants.

### C. Damages and State Law Claim

Plaintiffs, by not responding in their opposition papers, have conceded that they cannot seek damages from defendants and that the state law claim should be dismissed. Therefore, the court will strike plaintiff's prayer for damages and dismiss the state law claim.

### D. Individual Defendants

Defendants also argue that the individual defendants, Williams and Goldberg, are not proper defendants in this case. Under Title III of the ADA, as under Titles I and II, institutions, not their employees, are the ones who own, lease, or operate places of public accommodation and are therefore subject to ADA liability. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002); see also Coddington v. Adelphi U., 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999); Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) ("[T]he ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations."). It is "the institution has the power to make accommodations and thus it operates the place of public accommodation and is the proper defendant." Coddington, 45 F. Supp. 2d at 217. This result is eminently reasonable in cases such as this where, now, plaintiff seeks only injunctive relief. If the institution, not the individuals, has the power to accommodate, only an

injunction directed at the institution will provide the relief sought.

Therefore, the court will dismiss the complaint as to defendants Williams and Goldberg.

IV.     CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that plaintiff's motion [32] for extension of time to file a response to defendants' summary judgment motion is GRANTED;

ORDERED that defendants' motion [28] for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendants' motion is denied as to whether plaintiff was otherwise qualified or whether the School discriminated.  Defendants' motion is granted on the questions of whether damages may be sought, whether a state law claim may be maintained, and whether the plaintiff may name individual defendants.  Therefore, plaintiff's state law claim is DISMISSED, plaintiff's prayer for damages is stricken, and claims against individual defendants Goldberg and Williams are DISMISSED WITH PREJUDICE.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, March 22, 2005.